EVA NIX v. IRA ENGLISH AND OPHELIA SMITH.

(Filed 12 April, 1961.)

**1. Courts § 20—**

An action on a transitory cause arising in another State is governed as to the substantive law by the law of such other State, but procedural matters, including the sufficiency of the evidence to require its submission to the jury, is to be determined by the laws of this State.

**2. Same: Automobiles § 47—**

In an action instituted in this State to recover for injuries received by plaintiff passenger in an automobile accident occurring in the State of Georgia, plaintiff must allege and prove gross negligence as required by the law of Georgia as a prerequisite to recovery.

**3. Trial § 22b—**

The rule that evidence offered by defendant which is favorable to plaintiff should be considered in determining whether plaintiff should be nonsuited is limited to such evidence offered by defendant which is relevant to the allegations in plaintiff's pleadings, and defendant's evidence favorable to plaintiff cannot warrant recovery on a theory of liability entirely foreign to plaintiff's allegations.

**4. Pleadings § 11—**

A reply must be consistent with the complaint and plaintiff should not be permitted to file a reply which sets-up a cause of action in substitution for and inconsistent with the cause alleged in the complaint.

**5. Same: Automobiles § 35—**

Where the complaint is predicated upon wrongful acts and omissions of defendant while in full possession of her faculties, it is error for the court to permit plaintiff to file a reply and to submit the cause to the jury upon allegations of the reply predicated upon plaintiff's loss of control of the vehicle because of loss of consciousness by reason of an attack of insulin shock, and alleging that defendant was grossly negligent in attempting to operate the vehicle when defendant knew or should have known she was likely to suffer such an attack.

APPEAL by defendant (Ophelia Smith) from *McLean, J.,* August Civil Term, 1960, of GASTON.

Plaintiff's action is to recover damages for injuries sustained on Saturday, May 31, 1958, in Habersham County, Georgia, allegedly caused by the gross negligence of Ophelia Smith, plaintiff's adult daughter, in the operation of an automobile in which plaintiff was a passenger.

As to Ira English, the action was dismissed for lack of service of process. Hence, "defendant," when used herein, refers to Ophelia Smith.

After the death of Arthur Smith, plaintiff's first husband and de-

fendant's father, plaintiff married Mr. Nix. On May 31, 1958, and prior thereto, plaintiff lived in Gastonia, North Carolina. On May 31, 1958, and for some three years prior thereto, defendant lived in the home of Ira English and wife, Mrs. Inez English, at or near Demorest (Habersham County), Georgia. Inez English is a sister of Arthur Smith, plaintiff's first husband. Wiley W. Smith, the father of Arthur Smith and of Inez English, also lived in the English home. (Since September, 1959, defendant has lived in Gastonia with plaintiff.)

On May 31, 1958, plaintiff left Gastonia on the 9:30 a.m. train to visit her said relatives. When she arrived at Cornelia, Georgia, shortly after 2:00 p.m., she was met by defendent and Inez English, who took her to the English home, defendant operating the English car. Later, when Inez English requested defendant to go to Clarkesville, Georgia, to purchase food for Sunday dinner, defendant invited plaintiff to go with her. Plaintiff, also Wiley W. Smith, rode (as passengers) with defendant on the trip to Clarkesville. In returning from Clarkesville, defendant turned off the Nachoochee Highway to tell a friend at the Sisk residence that her mother had arrived and was with her. Thereafter, defendant returned to the Nachoochee Highway, and while traveling thereon en route to the English home, the car left the paved portion of said highway, traveled some distance on the shoulder or ditch on one side and then crossed the paved portion and came to rest in a kudzu patch on the opposite side. While the car did not turn over, plaintiff was thrown about inside the car and was injured.

*In her complaint,* plaintiff alleged her injuries were proximately caused by the gross negligence of defendant in that the car left the narrow and winding road because it was being operated by defendant "at an excessive, improper, and unlawful rate of speed in excess of 60 miles per hour," without sufficient brakes, without proper control, without proper lookout, and in a careless and reckless manner.

Answering, defendant denied all allegations as to her negligence and asserted two further defenses. In her first further defense, she asserted, in substance, that she was a diabetic and was taking insulin to control her condition; that, while operating the car "at a rate of speed within the lawful speed limit of 60 miles per hour and in a careful and prudent manner," she was "suddenly . . . overcome by an attack of insulin shock and lost consciousness temporarily"; that the car, when it left the road, was out of her control on account of her then unconscious condition; that "she had never previously been afflicted with an attack of insulin shock during the daytime hours" and had no reason to anticipate such an attack on this occasion; and that plaintiff's injuries were caused by unavoidable

accident. In her second further defense, defendant pleaded contributory negligence, alleging if defendant was negligent in failing to anticipate a sudden attack of insulin shock on this occasion, which she denied, plaintiff, who knew of defendant's diabetic condition, should have also anticipated such attack, and in such event plaintiff was contributorily negligent in riding with defendant.

On behalf of defendant, the depositions of Wiley W. Smith, Ira English and Inez English were taken in Demorest, Georgia, on May 27, 1960.

At August Term, 1960, the case came on for trial on the issues raised by said pleadings.

Plaintiff's testimony was the only evidence offered by her as to what occurred on the occasion of her injury. She testified the highway was narrow and crooked. She was permitted to testify, over defendant's objections, that defendant was driving "fast"; that she (plaintiff) told defendant a time or two to slow down, that she was going too fast; that defendant "would slow down and then pick up again"; and that, on one occasion before the time the car left the road, defendant was driving at a speed of between 70 and 80 miles per hour. She testified defendant turned her head and spoke to Smith, who was in the back seat, saying, "Grandpa, you're not afraid of me, are you?" and that just as he answered, "No," the car "began to run off the road."

At the close of plaintiff's evidence, defendant moved for judgment of involuntary nonsuit and excepted to the court's denial thereof. Thereupon, defendant offered evidence, consisting of her testimony, the said depositions and portions of testimony given by plaintiff on adverse examination prior to trial.

Evidence offered by defendant tends to show she had suffered three prior attacks of insulin shock, the first in 1957 when she was hospitalized and her diabetic condition was discovered; that, as directed by her doctor, she had one insulin injection each day and was on a prescribed diet; and that she had never had an attack of insulin shock when awake, the three previous attacks having occurred when she was asleep. Defendant testified as to her insulin injection and meals on May 31, 1958.

Defendant testified she had no clear recollection of what happened after "hollering" at a friend while going down the Sisk driveway. She testified: "I have no recollection of the trip from leaving the friend's house to where the car wound up." She testified that, while in Clarkesville, she had a headache, but this was not unusual; and that the only recollection she had as to what occurred after she left

the Sisk home was that she remembered "hearing Mother praying" and remembered, vaguely, hearing gravel hit the side of the car.

Wiley W. Smith, defendant's 80-year old grandfather, testified, in substance, as follows: Defendant and Smith got out of the car at the Sisk home. Plaintiff stayed in the car. Defendant went over and said something to "Old Lady Sisk" and then went into the house. As defendant came back to the car, Smith noticed defendant "kind of staggered," and acted "like she couldn't walk." Nothing was said by Smith, by plaintiff or by defendant as to this. In leaving the Sisk premises, plaintiff was seated on the front seat to the driver's right and Smith was in the back. When about a half a mile from the Sisk home, defendant "wasn't looking at the road close enough to suit" Smith. Defendant "laid over" to her left. She looked like she was asleep. She was holding the steering wheel and had her foot on the "foot feed." Smith and plaintiff repeatedly asked, "What's the matter with you?" Defendant did not answer or move. Smith couldn't reach the ignition switch or the "foot feed." He told plaintiff to kick defendant's foot off the "foot feed." Plaintiff did nothing but holler and pray.

In rebuttal, plaintiff offered, and the court admitted over defendant's objection, a portion of plaintiff's testimony on adverse examination in which she stated the car operated by defendant was "going fast."

At the close of all the evidence, (1) defendant moved for judgment of involuntary nonsuit and excepted to the court's denial thereof, and (2) the court, over defendant's objection, granted plaintiff's motion for leave to file "the reply" referred to below.

Plaintiff's said reply is directed to defendant's said further defenses. Plaintiff admits paragraph 1 of defendant's first further defense in which defendant alleged: "1. This answering defendant is a diabetic and it has been and is necessary for her to control her condition by insulin injections at periodic intervals." Plaintiff admits paragraph 2 of defendant's first further defense except the portion thereof reading, "when suddenly this answering defendant was overcome by an attack of insulin shock and lost consciousness temporarily," which plaintiff denied. The admitted portions of said paragraph 2 are as follows: "2. On the occasion complained of by the plaintiff, this answering defendant was driving the automobile of Ira English with the plaintiff riding therein as a passenger at a point four or five miles north of Clarkesville, Georgia, *at a rate of speed within the lawful speed limit of 60 miles per hour and in a careful and prudent manner,* . . . This defendant is informed and believes and therefore

alleges that *while she was thus stricken,* the automobile which she was operating left the road and that the plaintiff received such injuries as she suffered while the automobile *was thus out of the control* of this defendant." (Our italics)

In plaintiff's said pleading, "by way of further Reply," plaintiff alleged: Defendant was guilty of gross negligence (a) in attempting to operate an automobile upon the public highway when she knew or should have known she was subject to insulin coma by reason of a diabetic condition, and that she might lapse into unconsciousness at any time, (b) in continuing to operate the automobile when she "had knowledge of an impending diabetic coma," and (c) in operating said automobile for a distance of more than one mile while "in a diabetic coma or insulin shock."

Thereafter, in the manner discussed in the opinion, issues of gross negligence, contributory negligence and damages were submitted to the jury. The jury answered the issues of gross negligence and contributory negligence in favor of plaintiff and awarded damages in amount of $15,000.00. Judgment, in accordance with the verdict, was entered. Defendant excepted and appealed, assigning errors.

*O. A. Warren and Whitener & Mitchem for plaintiff, appellee.*
*Carpenter, Webb & Golding for defendant, appellant.*

BOBBITT, J. The court's instructions refer solely to allegations of defendant's gross negligence set forth in plaintiff's "further Reply." They assume defendant lost control when stricken by an attack of insulin shock. The court's review of plaintiff's contentions on the first issue (gross negligence of defendant) was based on the testimony of defendant that she knew she had a headache when she was in Clarkesville and on the testimony of Smith that defendant staggered when she returned from the (Sisk) house to get back in the car. The sole question for jury determination on the first issue, under the court's instructions, was whether defendant drove the car from the Sisk home and continued to drive it when she knew or should have known she was likely to suffer an attack of insulin shock while operating the car and lose consciousness and endanger her passengers. In short, the first issue was submitted and tried on a theory first introduced by plaintiff in the "further Reply" filed at the close of all the evidence.

The complaint was not amended. Plaintiff did not seek leave to delete any of her original allegations as to defendant's gross negligence. The court did not instruct the jury to disregard plaintiff's original allegations or plaintiff's testimony in support thereof. There is nothing

in plaintiff's testimony tending to show anything in defendant's conduct indicating she was about to suffer or did suffer an attack of insulin shock. Plaintiff's testimony that defendant turned her head and spoke to her grandfather, who was on the back seat, at the time the car "began to run off the road," tends to show defendant was not then unconscious on account of an attack of insulin shock or otherwise. In short, the court ignored plaintiff's original allegations and her testimony in support thereof. The first issue was submitted and tried solely on allegations in the "further Reply," which, if supported, were supported by evidence offered by defendant.

The substantive rights and liabilities of the parties are to be determined in accordance with the law of Georgia, the *lex loci*. Procedural matters are to be determined in accordance with the law of North Carolina, the *lex fori*. *Clodfelter v. Wells,* 212 N.C. 823, 195 S.E. 11, and cases cited; *Childress v. Motor Lines,* 235 N.C. 522, 70 S.E. 2d 558; *McCombs v. Trucking Co.,* 252 N.C. 699, 114 S.E. 2d 683.

Thus, in determining "(t)he actionable quality of the defendant's conduct," the Georgia law controls. *Howard v. Howard,* 200 N.C. 574, 158 S.E. 101; *Harper v. Harper,* 225 N.C. 260, 34 S.E. 2d 185, and cases cited. Whether, under the substantive law of Georgia, the evidence offered by plaintiff is sufficient to require its submission to the jury is determinable in accordance with the law of this jurisdiction. *Clodfelter v. Wells, supra; Childress v. Motor Lines, supra.*

Under Georgia law, a guest passenger, to recover from his host, must allege and establish gross negligence. Gross negligence is defined by statute, Code of Georgia (Annotated), 1956 Revision, § 105-203, as the absence of "that degree of care which every man of common sense, howsoever inattentive he may be, exercises under the same or similar circumstances." *Caskey v. Underwood,* 89 Ga. App. 418, 79 S.E. 2d 558. Under *Austin v. Smith,* 96 Ga. App. 659, 101 S.E. 2d 169, plaintiff's original allegations of defendant's gross negligence appear sufficient. Too, under Georgia decisions, whether plaintiff's testimony tending to establish her said allegations was sufficient to support a finding of such gross negligence and its causal relationship to plaintiff's injury would seem a question for jury determination. *Parker v. Johnson,* 97 Ga. App. 261, 102 S.E. 2d 917, and cases cited.

We do not hold the court erred in overruling defendant's motion for judgment of nonsuit. Rather, we hold the court erred in permitting plaintiff to file such reply and in submitting the case to the jury upon the allegations of the "further Reply." Hence, we do not consider the sufficiency of the evidence to support the allegations of gross negligence set forth in the "further Reply."

Ordinarily, evidence favorable to plaintiff, although offered by defendant, is to be considered in passing upon motion for judgment of nonsuit. However, this rule applies only to evidence relevant to the allegations of the complaint. Here, the evidence offered by defendant on which plaintiff seeks to rely tends to establish a factual situation radically different from that alleged by plaintiff in her complaint and supported by her testimony.

Whether an amendment of the complaint, incorporating therein the allegations set forth in the "further Reply," would be permissible, is not presented. G.S. 1-163; *Stamey v. Membership Corp.*, 249 N.C. 90, 105 S.E. 2d 282; *Perkins v. Langdon,* 233 N.C. 240, 63 S.E. 2d 565. No motion for leave to so amend the complaint was made.

Where the answer contains new matter constituting a counterclaim or defense, the plaintiff, *by reply,* may allege "any new matter *not inconsistent with* the complaint, constituting *a defense* to the new matter in the answer." (Our italics) G.S. 1-141. A reply is a defensive pleading. Its purpose is to support, not to contradict, the complaint. 41 Am. Jur., Pleading § 185. "The plaintiff cannot in his reply set up a cause of action different from that contained in his complaint. Such a pleading is a departure, and is governed by the provision that the reply must not be inconsistent with the complaint." McIntosh, North Carolina Practice and Procedure, § 479. *Miller v. Grimsley,* 220 N.C. 514, 17 S.E. 2d 642. ". . . a party may not be allowed in the course of litigation to maintain radically inconsistent positions, or to state one cause of action in the complaint and in the replication another which is entirely inconsistent." *Berry v. Lumber Co.,* 183 N.C. 384, 111 S.E. 707.

The gross negligence alleged in the complaint is predicated upon wrongful acts and omissions of a person in full possession of her faculties. The reply is predicated upon loss of consciousness and control when stricken by an attack of insulin shock, the alleged gross negligence consisting of the attempt to operate the car when defendant knew or should have known she was likely to suffer such attack. In our view, the cause of action asserted in the "further Reply" is a new cause of action and is radically inconsistent with the cause of action alleged in the complaint.

"The reply or replication must not depart from the complaint, petition, or declaration; and it follows that a reply or replication may not set up new causes of action, enlarge the original cause of action, broaden the scope of the complaint or petition, add or substitute new grounds of action or relief, or permit plaintiff to take a position inconsistent with that taken in the complaint. In other words, plaintiff

must recover, if at all, on the cause of action stated in the petition and not on one stated in the reply." 71 C.J.S., Pleading § 200.

It is well settled in this jurisdiction that a plaintiff must make out his case *secundum allegata*. His recovery, if any, must be based on the allegations of his complaint. *Andrews v. Bruton*, 242 N.C. 93, 95, 86 S.E. 2d 786, and cases cited; *Manley v. News Co.*, 241 N.C. 455, 460, 85 S.E. 2d 672, and cases cited.

For error in permitting plaintiff to file such reply and in submitting the case to the jury upon the allegations of the "further Reply," defendant is entitled to a new trial.The reply is stricken. In the absence of further orders, the pleadings consist of the complaint and answer.

New trial.